FILED
2019 Mar-06 AM 11:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| KAREN GILLOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 5:17-cv-02071-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

**I.     Introduction**

The plaintiff, Karen Gillott, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Ms. Gillott timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Gillott was 47 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education, as well three years of college completed. (Tr. at 132, 204, 512.) Her past work experiences include

1

employment as a cosmetologist and a house worker. (Tr. at 60, 205.) Ms. Gillott claims that she became disabled on April 30, 2014, due to degenerative disc disease, back injuries, anxiety, and depression. (Tr. at 203).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Ms. Gillott met the insured status requirements of the Social Security Act through the date of her decision. (Tr. at 12.) She further determined that Ms. Gillott has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's degenerative disc disease; status post lumbar laminectomy and hemilaminectomy on October 27, 2015; status post anterior cervical discectomy and fusion on September 15, 2015; and essential hypertension are considered "severe" based on the requirements set forth in the regulations. (Tr. at 12-13.) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14.) The ALJ determined that Ms. Gillott has the following RFC: to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), such that she could lift and/or

carry 20 pounds on occasion and 10 pounds frequently; sit, stand, and walk a total of 6 hours each; occasionally push/pull with her non-dominant left upper extremity; never climb ladders, ropes, or scaffolds; occasionally perform all other postural activities; and not have concentrated exposure to extremes of temperature, vibrations, and workplace hazards such as unprotected heights and dangerous moving machinery. (Tr. at 14-18).

Next, the ALJ obtained the testimony of a Vocational Expert ("VE") and determined at steps four and five of the sequential evaluation process that Plaintiff could return to her past relevant work as a cosmetologist and could also make an adjustment to other jobs that exist in significant numbers in the national economy, such as tester, assembler, and inspector. (Tr. at 18-19). The ALJ concluded her findings by stating that Plaintiff has not been under a "disability," as defined in the Social Security Act, from the alleged onset date through the date of the decision. (Tr. at 19.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone*

*v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its

entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Gillott argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ erred in finding her not entirely credible and (2) the ALJ erred in giving little weight to the opinion of Dr. Brian James, her primary care physician.

### A. Credibility Determination

When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms,

7

the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929 (c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26. In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Plaintiff alleges chronic moderately-severe neck and back pain. Plaintiff testified at her hearing that she stopped working because she was having issues standing due to low back pain and numbness in her left leg. (Tr. at 43). She testified that she cannot sit or stand for very long due to her pain. (Tr. at 48). According to Plaintiff, she can only sit or stand for five minutes before her legs go numb. (Tr. at 48). She indicated that she can lift about five pounds at one time. (Tr. at 57). Plaintiff explained that her neck surgery helped with the numbness in her left arm but that she still has numbness in her fingers. (Tr. at 49). She further testified that her back surgery helped with the numbness in her left leg but if she is sitting or standing too long she starts to lose feeling. (Tr. at 49). According to Plaintiff, her pain ranges between a five and seven on a ten-point pain scale. (Tr. at 53). Plaintiff indicated that her pain gets so severe about five to six days a month that she needs

to take her pain medication, Norco. (Tr. at 54). Plaintiff testified that she is in her recliner about 80% of the day for pain management. (Tr. at 55).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. at 15). The ALJ explained her reasoning for this finding throughout her decision. (Tr. at 15-18). Specifically, the ALJ noted that the medical evidence of record showed that despite Plaintiff's back and neck impairments and associated complaints of pain, Plaintiff had significantly normal physical examination findings, and medication was effective for controlling her symptoms. (Tr. at 15-17).

Substantial evidence supports the ALJ's credibility determination in this case. In November 2013, Plaintiff was being treated at Lawrence Rural Health Clinic in Moulton, Alabama, and complained of left leg pain when standing for long periods of time and reported that her medication was not helping her pain. (Tr. at 367). In January 2014, Ibuprofen PM was added to her medication regimen. (Tr. at 374). The next month, she was prescribed Tramadol for her continued pain. (Tr. at 377).

Plaintiff began treatment with Dr. Jason Banks, a neurosurgeon at Spine and Neuro Center in Huntsville, Alabama, on May 28, 2014. (Tr. at 273.) At that time Plaintiff reported severe low back pain, left leg pain, and numbness that had been present for five months. (*Id.*) Based on his examination, Dr. Banks noted that Plaintiff's pain was "minimal." (Tr. at 275.) Dr. Banks discussed surgical options, but Plaintiff was hesitant to undergo any kind of operative intervention at that time. (Tr. at 276). Plaintiff was seen by Dr. Ryan Aaron with Spine and Neuro Center on June 17, 2014, for her continued back and leg pain. (Tr. at 269). Plaintiff reported that her pain was better with frequently changing positions but the epidural she received did not help. (*Id.*) She was seen on June 25, 2014, by Dr. Banks for her continued complaints of low back pain and leg pain and numbness. (Tr. at 265). Plaintiff reported having had to quit her job as a hairstylist due to her significant back pain. (Tr. at 266). An X-ray showed degenerative changes at L4-L5 and L5-S1, and an MRI showed stenosis and facet hypertrophy worse on the left than the right at L4-L5 and L5-S1. (*Id.*) In July and August 2015, Plaintiff described her back and leg pain as severe and reported that it caused her to be unable to walk, work, or perform activities of daily living. (Tr. at 425).

On June 4, 2014, Plaintiff reported to Dr. Brian James, her primary care physician, that she found relief with the pain medication Norco for pain as needed.

(Tr. at 292). Dr. James's July 24, 2014 treatment note indicates that "her back pain is responding to Motrin 800mg." (Tr. at 296). On November 1, 2014, Plaintiff reported to Dr. James that half a tablet of Norco worked for "breakthrough pain, which typically only occurs every few days after prolonged standing and heavier lifting movements." (Tr. at 305). An April 13, 2015 treatment note from Dr. James states her back pain was "managed well" with medications. (Tr. at 524). On June 1, 2015, Plaintiff again reported to Dr. James only using Norco about once a week "after days of heavier exertion," and that Motrin "helps her on other days." (Tr. at 521). An August 11, 2015 treatment note states that her medication "continues to relieve her breakthrough pain." (Tr. at 515). Additionally, treatment notes from examinations by all of Plaintiff's physicians showed Plaintiff was in no acute distress and retained normal back range of motion, an ability to stand on her heels and toes, normal posture, normal gait and stance, full strength in her upper and lower extremities, normal sensation, a normal muscle bulk and tone, and normal reflexes. (Tr. at 15-16, 265-66, 270-71, 274-75, 293-94, 298, 301, 303, 307, 310, 421, 425, 517, 519-20, 522-23, 526).

In September 2015, Dr. Banks suggested that Plaintiff undergo cervical surgery due to her significant spinal stenosis of C5 and C6 and to lesser degree at C4 and C5. (Tr. at 418). On September 17, 2015, Plaintiff underwent a C4-C6

anterior cervical fusion. (Tr. at 432). Plaintiff underwent lumbar surgery on October 27, 2015, which consisted of a L4-L5 bilateral laminectomy, foraminotomy, nerve decompression with left L5-S1 hemilaminectomy, foraminotomy and nerve decompression. (Tr. at 430). Following her surgeries, examinations showed that Plaintiff was in no apparent distress and was neurologically intact, including having normal sensation, and she had full strength and normal muscle bulk and tone, and normal gait and stance. (Tr. at 16, 412, 455, 503, 510, 513, 530). At a November 18, 2015, follow up with Dr. Banks, Plaintiff reported improvement with her symptom of numbness but continued pain in her back. (Tr. at 455.) Dr. Banks noted that she was neurologically intact, that her incisions healed well, she was prescribed Norco and a muscle relaxant as needed for pain, and overall, Dr. Banks thought she was doing well. (*Id.*) That is the last recorded visit to Spine and Neuro Center.

In February 2016, Plaintiff reported to Dr. James that her chronic back pain had improved after her surgeries. (Tr. at 508.) Indeed, a February 2, 2016, treatment note states that "chronic post-op lower back pain is improved," and an August 30, 2016, treatment note states that "[h]er pain is improved from pre-op." (Tr. at 508, 531). In May 2016, Plaintiff reported to Dr. James that she was resting well at night, her back and neck pain were tolerable, her other joint pain was

controlled with the use of Motrin, and that she was going to the gym to work on her weight. (Tr. at 16, 501). At Plaintiff's last visit with Dr. James in August 2016, Plaintiff reported that her neck, back, and occasional hip pain had improved, and that she experienced sporadic tingling in two fingers of her left hand but that the tingling resolved with hand shaking. (Tr. at 531.) This visit was a mere two months before Plaintiff's administrative hearing where she claimed that her average back pain is a level 5 to 7 on a 10-point scale and she continues to experience significant numbness on the left side. (Tr. at 53.)

Plaintiff's argument that the ALJ "cherry-picked" the evidence in evaluating her credibility lacks merit. To the contrary, the ALJ cited to evidence that supported a finding that Plaintiff had limitations, including some of the evidence Plaintiff argues that the ALJ ignored, such as Plaintiff's reports of neck and back pain, numbness, and left leg pain, her treatment visits, and the results of her X-rays and MRIs. (Tr. at 15-16). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision" so long as the ALJ's decision indicates she considered the record as a whole. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (rejecting the claimant's argument that the ALJ ignored evidence favorable to him in evaluating his statements) (quoting *Dyer*, 395 F.3d at 1211).

In addition to the objective medical evidence and Plaintiff's reports about the effectiveness of her medications and surgeries, the ALJ's assessment of Plaintiff's subjective complaints is supported by Plaintiff's report of her activities of daily living. The ALJ listed some of Plaintiff's self-reported daily activities as follows: preparing simple meals, washing clothes, handling a savings account, using a computer, driving, shopping in stores, regularly attending church, going to the gym, completing a phlebotomy course, and interacting with her husband and daughters. (Tr. at 18.) Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), that does not mean it is improper for the ALJ to consider a claimant's daily activities at all. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (specifically listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms).

Plaintiff claims that the ALJ's description of her daily activities was not accurate given that she indicated she had limitations with all of her activities. For example, Plaintiff points out that she clarified at her hearing that she was only going to the gym once or twice a month when she reported she was going. (Tr. at 47). She explained that her husband and children do most of the chores but that she does

put the laundry in the washer after her husband brings it to the laundry room. (Tr. at 50). She testified that she took the phlebotomy course but had "lots of help" completing it, and that she had issues sitting and standing for long periods of time while taking the course, which was only on the weekends. (Tr. at 41). Nonetheless, Plaintiff did engage in the activities that the ALJ identified in her decision, and thus, the ALJ did not make a misstatement of fact. Moreover, although Plaintiff qualified her level of activity, that does not mean it was improper for the ALJ to rely on her activities as evidence supporting the determination. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

Considering the foregoing, substantial evidence supports the ALJ's finding that Plaintiff's complaints of pain were not entirely credible.

### B. Weight to the Treating Physician's Opinion

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent

the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight

unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis*, 125 F.3d at 1440) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions

of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Plaintiff's primary care physician Dr. James submitted a "To Whom It May Concern" letter dated September 11, 2016, writing as follows:

> I have also been managing her cervical and lumbar degenerative disc disease with spinal stenosis along with her neurosurgeon in Huntsville. Medical management of the pain and numbness she experiences in both her upper and lower extremities has included rest, massage, physical therapy, anti-inflammatories, muscle relaxants and pain medication. With the above interventions not easing her pain to an acceptable level, she recently underwent surgical procedures with Dr. Jason Banks on her cervical and lumbar spine. While the surgeries certainly helped her functionally, she still has limitations and these will likely be lifelong problems. She estimates that standing, sitting or walking for more than 15 minutes at a time results in pain and sensory disturbances in her legs, with the left leg being worse than the right. She would have significant difficulty managing a 6-8 hour work shift due to this discomfort. I would estimate that she would miss at least 3 days of work per month on average due to discomfort. We can certainly provide any medical records necessary to verify her medical issues, including MRIs and CT myelograms of her spine that show moderate to severe stenosis of the spinal canal.

(*Id.*)

The ALJ gave little weight to Dr. James's letter. (Tr. at 17.) The ALJ had good cause to do so. The ALJ noted that the limitations set forth by Dr. James were

not supported by Plaintiff's treatment history, stating that, instead, "the treatment notes show normal examination findings, and the claimant admitted that the pain was improved after surgery and well controlled with medications." (*Id.*) Indeed, as detailed in the preceding section, even prior to surgery, Plaintiff's pain was responding to medication, and she only took stronger medication around once a week when she engaged in heavy activities. (Tr. at 292, 296, 305, 515, 521, 524). As the ALJ noted, following surgery, Plaintiff improved and her pain was tolerable. (Tr. at 455, 501, 508, 531). Throughout her treatment history, Plaintiff displayed significantly normal examination findings, including normal range of motion, normal strength, normal gait and stance, and normal sensation. (Tr. at 265-66, 270-71, 274-75, 293-94, 298, 301, 303, 307, 310, 412, 421, 425, 455, 503, 510, 513, 517, 519-20, 522-23, 526, 530).

Plaintiff emphasizes the length of her treatment relationship with Dr. James, but, as noted, that is just one factor to be considered in weighing a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Plaintiff also claims that "there is no indication that her pain improved to the point she would be able to maintain gainful employment" (doc. 9 at 14), but there is no presumption that a claimant is disabled simply because she has a physical impairment that causes pain. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("the mere

existence of [] impairments does not reveal the extent to which they limit[one's] ability to work") (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")). In sum, the ALJ had good cause to discount the letter written by Dr. James in September 2016.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Gillott's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 6, 2019.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
160704